May it please the court, according to the Immigration and Nationality Act, the proper venue for a petition for review lies in the judicial circuit in which the immigration judge completed proceedings. Here, my client's proceedings were conducted from start to finish by an immigration judge sitting within the Fourth Circuit and who conducted those proceedings entirely from within the Fourth Circuit. As such, my client's proceedings were completed by the immigration judge in the Fourth Circuit. Given that the immigration judge was sitting within the Fourth Circuit and conducted my client's proceedings from start to finish within the Fourth Circuit, our position is that the immigration judge completed the proceedings in the Fourth Circuit, making this court the proper venue for a petition. And even if it were not, it would not be in the interest of justice to transfer this case at this late stage, particularly since the government has not offered this court any attempt to reconcile its position with the plain language of the statute. And not only that, it has not offered any response to my client's argument that it would not be in the interest of justice to transfer this case at this stage. Can you answer this sort of piece of the question? So I sort of, you can take that I accept your argument in large part. The hardest part of it to me is answering the question of how or whether the immigration judge can complete the proceeding in a place other than where the proceeding is located, right? So I understand the idea that the focus is on the IJ and the IJ is physically in Virginia. But can you respond to the argument that I think the other side makes or at least is the only place where it can be completed? Well, I would draw attention to the fact that the statute speaks of the immigration judge completing the proceedings. So to look back to the decision and the opinion of which the court relied on in Sorcia, the statute directs the focus of the inquiry to the immigration judge's role, where the immigration judge performs the immigration judge's role. So maybe there's a sense in which the proceedings are in the hearing location, or maybe they're in the proceedings or where the record proceedings is located as the amicus argues. But from the perspective where the immigration judge completed the proceedings, the immigration judge has to complete the proceedings where he or she is located. So two additional things to add to that is that one is that I'm not sure what statutory a indication there is that Congress intended to use to refer to the proceedings or contemplated to the reference to the proceedings as pertaining to some particular place. If you look at the earlier version of the statute before the legal immigration reform and responsibility act, this was 8 U.S.C. 1105A2, 1996. I discussed this in the response to the motion at page nine. The phrasing of the language was that venue would be proper, and I'm paraphrasing, but in the circuit in which the administrative proceedings were conducted wholly or in part or where the petitioner decided. I think there's a... To come back to that, I don't think there's any indication that Congress understood the proceedings to be occurring at some determinative place. The point is that these are the administrative proceedings, and then the question becomes where did the immigration judge complete those proceedings? So just so I understand that argument, the argument being that 1105A2, the old version, provided venue in a variety of locations, right? There might be proceedings held in three different circuits, and the petitioner might reside in a fourth circuit. The suggestion is that by picking one location, it served to narrow the venue provision and make it more specific rather than the general one that preexisted. Is that the argument you're making? I believe that's correct. I think that the Yes. Okay. So we'll move on just to... Again, the government has not offered any response to my client's argument that transfer would not be in the interest of justice at this particular stage, and this is emblematic of the government's treatment of this case as a whole. At no point has the government within these proceedings actually meaningfully addressed my client's contentions. Indeed, conspicuously absent from the government's brief is any denial of my client's claim that the board failed to satisfy its obligation to announce its decision in terms sufficient for a reviewing court to perceive it as thought and heard and not merely reacted. The only issues on which the government brings itself to defending the board's own treatment of this case, the board's decision, the final administrative decision, is with respect to my client's motion to reconsider, and by extension, his motion to remand. Otherwise, the government confines its defense solely to the immigration judge's reasoning, and that will not do in this case. The board's intentions were primarily addressed to evidence that the immigration judge either failed to mention entirely or failed to meaningfully address. To the extent that the government offers responses to these arguments, these are nothing more than counsel's post-op impermissible rationalizations. All of this is reason enough to grant my client's petition. As this court has recognized in Cabrera-Vasquez v. Barr, the board's failure to engage with an applicant's evidence is reversible error because it hampers the court's ability to meaningfully review what was decided below. Indeed, in- Mr. Boone, excuse me, sir. We've got an adverse credibility finding, and I understand your argument to be that the adverse credibility finding can't be fully considered because the IJ's analysis was defective. He misunderstood the record, apparently, some of the things he relied on, but let's assume that the adverse credibility finding holds. What independent evidence supports your claim for asylum? Well, my client's testimony was corroborated by his wife's testimony, which the immigration judge found was inconsistent with my client's testimony at one particular point, which was addressed before the board and addressed in my brief before this court, but found her testimony to be credible. She described my client when he came back from being detained after a peaceful political protest by Cuban government officials, described how he could barely speak, described that he was beaten, described that he was too afraid to go to a hospital. In addition to that, my client provided citations showing that he appeared before the Cuban government for interviews and other affidavits from neighbors and a family member slash cohort. Counsel, I have one question to the merits of your argument. The immigration judge below talked about both, I think, as to the likelihood of future either torture or persecution, the fact that as your client presents the case, the risk to him exists only if he engages in activity that he engaged in before, namely protesting the government. In our country, of course, that's something that is protected by the First Amendment and other issues. Is there authority that addresses that particular point that if you refrain from doing the activity, you would not be subject to either torture or persecution? Do you have authority to address that situation? I have not been able to find any direct authority. I think if you look at page 66 and 67 of my opening brief, I cited to analogous authority in the religious context, where it's being where immigration judges will say, well, the applicant can avoid future persecution by hiding his or her religious faith is not an appropriate grounds because that's not the kind of thing we should expect the person to hide to the limit, not to expose. I would just add that it wasn't, if I recall correctly, the immigration judge was a bit broader and I don't believe he said that he wouldn't, and I could be incorrect about this, but I don't believe that he said that he would just avoid political protest, but it was even more deeply avoid expressing your opinions. So to the extent one might draw a difference and think that it's about disruption or something like that, it's just mere fact that my client, because all this started because my client was at family party and said something derogatory about Fidel Castro. And I will reserve the rest of my time unless the court has any other questions now. Mr. Hurley. May it please the court. My name is James Hurley for the Respondent Attorney General Eric Garland. This petition for review should be denied for two reasons. First, substantial evidence supports the agency's adverse credibility finding, and even if Mr. Herrera was considered credible, he failed to meet his burden of proof for asylum, withholding, or cap protection. Second, this court should deny the petition because the board did not abuse its discretion in denying his motion to reconsider where Mr. Herrera didn't show, establish any factual or legal error in the board or immigration judge's prior decisions. So to start with the question about the venue, in this case, we would rely on the Sorcia versus Holder case from the Fourth Circuit that said that the issue of venue isn't jurisdictional. The concern is the interest of justice. And as we, as a government, we filed the motion right after this petition was filed in the Fourth Circuit, I think in July of 2019, that said that the case belonged in the Fifth Circuit because Mr. Herrera had been in the Fifth Circuit for the entire time. He was, he crossed the border at El Paso. The credible fear interview took place in Tallahatchie, Mississippi, and he was located in Louisiana for the immigration judge and the hearing. So the immigration judge and the board applied the Fifth Circuit case law to his case. So as we said in our motion to change venue, we we argued that the case belonged in the Fifth Circuit. But it was up to this court because, again, the issue of venue is not a jurisdictional issue. So those are, you've made several, I think, very reasonable arguments as a matter of policy, why the case should be in the Fifth Circuit. But can you talk to me a minute about why you think the statute actually authorizes that? And in particular, respond to Mr. Boone's arguments, which, you know, sort of make the point that the phrase here, you know, focuses on where the immigration judge is. And that at least sort of the most recent guidance from the department requires the immigration judge to identify specifically where he's located, as he did in this case, suggesting to me at least that there's a recognition that that is the appropriate venue under the statute, whatever the sort of reasons for that, you know, might be. But again, the statute, it says that the venue belongs where the immigration judge completed proceedings. So I think in this case, the immigration judge was sitting at Falls Church in Virginia. But again, I think he considered the fact that Mr. Herrera was in Jonesboro, Louisiana, that kind of, that meant that the proceedings were completed. You know, all the witnesses were from the Fifth Circuit. He testified from the Fifth Circuit. So I understand that, right. And if the statute said that the venue lies where the proceedings were completed, so in the passive voice, where the focus is on the proceedings or the hearing, right, all of those are like plausible, you know, sort of arguments. But when it focuses on where the immigration judge is, that's the object of the prepositional phrase, if my fifth grade English teacher would say, I suspect. That's where the focus is. And that's why, you know, in the footnote, he says, I'm in Falls Church. Yes. Well, and he correctly identified himself as being at Falls Church. But I believe in this case, he, it was up to the immigration judge and the board agreed with him, too, saying that in the immigration judge's mind, this, he completed the proceedings in the Fifth Circuit. And that just shows, because it would, it would be kind of strange if the immigration judge... Why do you say that that was in his mind? How do I know that? Well, that's what he stated for the record. He said that he identified himself as being in Falls Church and that he identified where his location, then he said Mr. Herrera was in Jonesboro. And then in his, in the decision, he applied the Fifth Circuit law. And he said the hearing is in Louisiana, but none of, none of those say that, say that he, he, you just said he thought the complete, the proceedings were completed in the Fifth Circuit. I don't see him saying that anywhere. Like he says, I'm in Falls Church. The hearing is in Louisiana. The petition is in Louisiana. I'm applying Fifth Circuit law. But none of that is, is his interpretation or, or understanding of the venue statute, I don't, I don't take. He didn't, he didn't cite the statute. He didn't say this is a statute and this is my interpretation of that's, I'm going to apply the Fifth Circuit law and not the Fourth Circuit law. But just by his, the decision he rendered, everything he relied on was the Fifth Circuit. So as we said in our motion to change venue, we, we just relied on the, this, the Fourth Circuit source, source to a case that said in the interest of justice, we should keep this in the Fifth Circuit. And that's what we said in our motion, just saying that, you know, all the, the case law that was applied there was Fifth Circuit. So it just made sense to keep this case in the Fifth Circuit. So, so that, that's the sort of core of your argument is that the interest of justice lie in the Fifth Circuit. So we should transfer it to there for, for that reason, not because the statute requires it to be there. Well, again, the, I, I, at this point, as your questions kind of led to, the immigration judge didn't go through that analysis of, okay, you know, we're, this is televideo, you're physically located in Jonesboro, I'm in, I'm in Falls Church. He, he just proceeded with the proceedings. And again, with him being in the Fifth Circuit and his, and his decision, you know, all the citations are the Fifth Circuit. So when you looked at the, the Sorcia case, I believe that case kind of supports our position though, because I think in that case, the, the petitioner was in North Carolina, but the immigration judge was in Atlanta. So he was in the 11th Circuit. And the, and the Sorcia case said, well, at this point, everything's briefed. In the interest of justice, it makes sense for us to keep it in the Fourth Circuit. So even, even though, right, because even if we found that the proper venue was in the Fifth Circuit, we could choose to keep it. Yes. Right. But, but if we find the proper venue is in the Fourth Circuit, I'm not sure we have the authority to choose to, to kick it to somebody else. Right. I mean, our authority, if venue is proper here, I'm not sure what our authority would be to, to send it to the Fifth Circuit. Correct. Well, I think it just depends on the interpretation of where proceedings were completed. And I think in this case, the immigration judge, you know, even though he identified himself as being in Falls Church, he said, well, he didn't, he didn't go through that analysis, but again, he applied the Fifth Circuit law. And he did. I mean, look, I don't know that this helps us given the statute and what it says, but the immigration judge said a little bit more than the hearing was conducted in Louisiana. He said the hearing was completed in Louisiana and the board said that too. Now, he may have been incorrect in doing that, but anyway, I think that, that indicates that's where he thought the, the, the hearing was completed. Maybe that doesn't complete the proceedings. I don't know. It's a weird statute. I think, I think that very, that statement kind of proves what he, what he said in this case. And again, just rely on the source of case at this point. The immigration judge, and I, this is, you know this better. When the hearing is finished, doesn't the immigration judge then go write an order? Correct. It's either, I think it's an oral decision in this case. Sometimes they reserve judgment and then the decision will be written, written down. You'll get it a few days later. In this case, it was, he went ahead and issued an oral decision. So, you know, at this point, we're not going to argue that this, you all should change venue in this case at this point, because it's been already, you know, already a year and a half. So, just shown by the fact that we moved to change venue right off the bat. I think it was, we filed our motion a day or two after he filed his petition for review. So, in this, in this case, you know, we, we rely again on the source of case and to say, you know, any interest, that's the kind of the rule that we're following in this case. Let me just ask one more thing, and I'll leave this and let you have some time on the merits. But, you know, this is all a little bit new with these, the way the immigration judges are in these three locations, as I understand it, where they aren't officially immigration courts. You don't, I don't, is, is the position that the government is taking now that, you know, in situations like this, where the immigration judge is in these centers, that, that the venue is where the petitioner is located? I mean, is there something that is the policy that's being applied in other cases too? I can't speak to that specifically, whether or not there's a new policy, but I think we, our rule of thumb would be, again, the, the interest of justice. It's, it's whether the immigration judge, what kind of law they apply in resolving the case. And I think in this case, because he was in Louisiana and he applied Fifth Circuit law, you wouldn't, he wouldn't, we wouldn't think that it would go to the Fourth Circuit after both the immigration judge and the board applied the Fifth Circuit law. So, to get to the merits, substantial evidence does support the immigration judge's adverse credibility finding in this case. Ms. Ridley, can I ask you, when you're making your presentation on the merits, to include telling us whether the Fifth Circuit law or the Fourth Circuit law, on any of the points that you're addressing, diverge so as to make a difference should the venue issue? Well, we would, I would rely on our briefing in this case that, because I'm not going to interchange or cite Fifth Circuit law here, I'm going to rely on the brief that we filed in the Fourth Circuit. We filed the motion to change venue and it wasn't granted. So, as we, as I said, in our opening brief, I just mentioned that that judgment was deferred. So, we rely on the Fourth Circuit law in this case. So, to begin with, the immigration judge found... Can I, I'm sorry to interrupt. Mr. Hurley, you may continue. Sorry for the disruption. No problem at all, Your Honor. I'd just like to start the merits of this case and substantial evidence supports the immigration judge's finding that Mr. Herrera was not credible and he hasn't cited any compelling evidence that he was credible to reverse the immigration judge and the board's decision in this case. Because, first and foremost, the immigration judge cited eight deficiencies in Mr. Herrera's evidence. Most glaring would be the fact that he did not mention anything that happened to him before December 2018. He didn't mention that in either his credible fear interview, which took place in June of 2019, or his written asylum application, which was filed on November 6, 2019. And then he got to the merits hearing on June or January 2, 2020. And then he starts talking about how not only was there more incidents before December 2018, it goes all the way back to March 2017, where he was at his wife's birthday party and then somehow somebody listened in on him and he said something bad about Castro. And then he got a summons in April of 2017 and told to go to the police station. That wasn't in his credible fear interview, and it wasn't in his mother's written declaration, which was from September of 2019. He didn't mention the two other instances where he got summonses to show up. There was a second one in October of 2018. He got another summons where he was told to go to the police station. He was detained for an hour there, and he was interrogated there. And he said in all three instances, he was threatened by the authorities. But none of that turned up in either his credible fear interview. And the asylum officer in that case asked him specific questions about, what are you afraid of?  You know, what were the dates? Give me the dates. And he specifically said, it was December, I think, 28th, 2018. And then another one on, I guess, January 10th. So he provided those dates specifically. And he said, oh, yeah, and I got this other notice saying, you know, turn up on January 15th. So she asked those specific questions, and she specifically asked him, too, was there anything else? And he said, no. So then, so it's not only this credible fear interview transcript. If you go to his mother's written statement, she wrote a statement for him in September. It was dated September 2019. And that follows his claim, what he said to the asylum officer during the credible fear. She doesn't mention anything before December of 2018 as far as his mistreatment. He said that, you know, he's my son. I know everything that happened to him. But she didn't mention any of those things at all. So that would be the most glaring inconsistency in this case. If you look at, you know, the other evidence in this case, too, where he provided statements from his, from the neighbors, and the neighbors said, oh, yes, that he was forced to participate in these cases. Again, he was pro se during the removal proceedings. The immigration judge asked him at every hearing whether or not he wanted an attorney. He said no at the first one. And I think it was October 2019. And then he appeared at the November 2019 hearing, and he said, I don't need an attorney now, but I think I'm going to get one for the merits hearing. And then at the merits hearing, he didn't have an attorney at that point. So, but if you look at the transcript of this case, the immigration judge did a good job of trying to elicit his testimony. She asked him about these things. And then the DHS attorney asked him on cross-examination, you know, they really, they pulled forth his claim. And it turned out that he didn't, he just didn't meet his burden to present a credible case. So, again, just to list off the discrepancies in his case, the differences between his three statements, the credible fear, the written asylum applications, and his testimony, and then his wife's testimony too, where she had different, I guess it was whether he was home when the police came to his house. Again, the immigration judge found that to be a discrepancy. On appeal, I guess the petitioner's wife submitted a statement there. And, you know, the board considered that and said that, well, that wouldn't make a difference anyway, you know, what she said. Other discrepancies were that in his mother's statement, she said that the authorities seized his equipment on January 10th. And he specifically testified that they didn't. He said something about he hid it and they seized it later on. So that's a discrepancy in the record. The immigration judge found that it was implausible that after he was detained for those five days and deprived of water for three days and fed food that was too sweet for him to eat, that he said he didn't need to go to the hospital and he just drank some sugar water and he felt better. Again, petitioner submitted evidence and his motion of remand were about, you know, scientific benefits of the sugar water. But again, the board considered that and said that it wouldn't make a difference in his case. There were also instances where his friend said that, or his witness's statement said that he was fined many times and he didn't testify to that. There's also questions about whether or not the police chief went to his house. I think he once said that that happened and his friend's statement said that it happened many times. And again, his friend's statement's about him refusing to participate in political activities and he didn't include that in his testimony or in his asylum application. So we would argue that substantial evidence supports the immigration judge's adverse credibility in this case and that he hasn't presented any credible or any compelling evidence that he was credible. And then the second part of the immigration judge's decision was he considered that, well, even if he is considered credible, let's see if he meets his burden of proof. And he found that he didn't. I see my time's running out, but I just want to make that point that even if he was credible, he didn't meet his burden. And my second big point is that the board didn't abuse its discretion in denying his motion to reconsider because he didn't show any factual or legal error in the board's or the immigration judge's decision. Thank you, Mr. Hurley. Mr. Boone, you've got a few minutes. Sure. So as for Venue, the government conceded now that it wouldn't be in the interest of justice to transfer this case at this point. So that is reason enough for the court not to transfer it. I also point out that as for the substance of that argument, that it would be in the on the citations to the application of Fifth Circuit precedent by the agency, but Sorosian makes no mention of what precedent the agency applied. And the government neither in its brief nor now has identified any way in which the application of Fifth Circuit precedent would change the outcome here. As for the credibility issues, these events before December 2018, as a general rule, there's no expectation that and it's there's no legally demanded expectation. It's not a reasonable expectation for a person to list each and every act of persecution or each or every fact underlying their claim when they submit their application or when they have a credible fear interview. And there's a qualitative difference, a huge qualitative difference between the events that the government is referring to. There was three brief interviews lasted about an hour or less each of them. The government made big warnings, but the government never, the Cuban government never hurt him. They didn't beat him. They didn't detain him. Yeah, but to that effect, sure, counsel, if I could ask you, I think that I think, you know, those statements, you know, as a general rule of right, I mean, you don't necessarily have to list everything. But I think what the immigration judge said is given how the petitioner testified before him that those earlier events set in motion and began all this government watch, government intrusion into his life, he talked about those being, you know, very significant events that changed the way his life was, you know, was because of the government's role there, that given the way he testified them, it was not credible not to mention them. Again, I don't think he's saying you never have to mention anything, but just the way he emphasized them at his hearing. And, you know, that perhaps that was, you know, another immigration judge might take a different view of that. But is that is that that doesn't seem irrational to me? Well, I think, you know, there's a few things to say. I mean, so one is just a reminder that my my client provided evidence of those citations with his... Did he provide evidence of them? Did he provide evidence? Did he have a provide a citation for the March 2017 incident? The March 2017 incident. The first time he says that they kick this up, and he testified that there was a citation issue, but I and I know he he provided citations for others, but I don't think he provided a citation for that, even though he said there was one. Your Honor, I don't know. I can't recall off the top of my head. I think I I do remember that there was three for three specific incidents, three specific interviews that my client testified to three specific interviews before the police, and that there's three citations in the record that he submitted with the asylum application corresponding to those dates. I don't remember March 10, 2017, rather than spend the time trying to look for it. I do remember that there were three interviews my client provided, documentation of all three of those citations. And to the reason I would... Clearly, the reason why in an ordinary case, the person doesn't testify to certain events and then creates an inference of incredibility because it tends to support the inference that the person is making those events up. But here we have independent documentary evidence of the events at hand. And there's been no finding or even suggestion by the immigration judge or the judge. So it's unclear why when you have documentary evidence that's unrebutted of certain events that the failure to mention those events at a particular point is going to make it reasonable to infer somebody is not credible in the first place. But at least this should have been more consideration. There should have been some consideration of the significance of this for the petitioner's credibility beyond what the immigration judge said, which was just, well, I see that he has the citations, but... And that's really where the immigration judge left. I mean, he didn't say... Let me rather than try to... I'll simply refer to the briefs. As far as the dates on the... To my client, not giving three specific events in the identifying three specific dates in his credible fear interview, the judge did not rely on that. That's not part of the judge's reasoning. I'll refer you to reply to page 10, note two. And as well, the government relies on certain alleged inconsistencies between my client's testimony and his supporting affidavits. But with the sole exception of my client's mother's affidavit, which there are already explanations for why there might be some divergence there, my client addressed all of these purported inconsistencies on appeal, and the board didn't address them, and the government still hasn't addressed them. Nothing further to be promised. Thank you, Mr. Bloom and Mr. Hurley. Of course, we'd love to come down and shake your hand, and thank you for your participation in the process. But we'll just do that virtually, but certainly appreciate your participation today. With that, I ask the clerk to adjourn court for this session. Dishonorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Barbara Milano Keenan